Jonas B. Jacobson (OSB No. 231106)
jonas@dovel.com
Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Dovel & Luner, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
Tel: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Pro Hac Vice application forthcoming

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| KATHERINE ZIPMAN, individually and on behalf of all others similarly situated, | Case No. 3:25-cv-01156 |
| Plaintiff, | |
| v. | CLASS ACTION COMPLAINT |
| PORTLAND LEATHER, LLC, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## Table of Contents

I.      Summary of the case. .................................................................................................1

II.     Parties. ........................................................................................................................2

III.    Jurisdiction and Venue. ...............................................................................................2

IV.     Facts. ...........................................................................................................................2

      A.      Portland Leather's deceptive sales. ................................................................2

      B.      Plaintiff was misled and harmed by the deceptive sales. ..............................13

      C.      Defendant breached its contract with and warranties with Plaintiff. ............14

      D.      No adequate remedy at law. ..........................................................................14

V.      Class Action Allegations .............................................................................................15

VI.     Claims .........................................................................................................................17

      Count 1: Oregon Unlawful Trade Practices Act (UTPA) ...............................................17

      Count 2: Breach of Contract ..........................................................................................19

      Count 3: Breach of Express Warranty ............................................................................20

      Count 4: Quasi-Contract/Unjust Enrichment ...............................................................21

      Count 5: Negligent Misrepresentation ..........................................................................21

      Count 6: Intentional Misrepresentation ........................................................................22

VII.    Relief. ..........................................................................................................................23

VIII.   Jury Demand. ..............................................................................................................24

## I.      Summary of the case.

1.      When a product is advertised as being on sale, this drives purchases. And there is nothing wrong with a legitimate sale. But some companies take advantage of consumers with fake sales: deceptive sales that aren't really discounts off the true regular price. To protect consumers, the law prohibits such deceptive sales.

2.      Defendant Portland Leather, LLC ("Portland Leather") makes, markets, and sells leather goods, such as bags, purses, and wallets. On its website, it advertises discounts off its regular prices. For example:



*Captured June 1, 2024*[1]

3.      These seem like great deals. But the truth is that discounts of at least 25% off are always available. When one sale ends, Portland Leather just advertises another. Consumers are being tricked into thinking they are getting a discount when they are really just paying the regular price.

4.      Oregon consumer Ms. Zipman ("Plaintiff") bought a product from Portland Leather's website and was deceived by its fake sales. Plaintiff brings this case to protect consumers nationwide who purchased discounted Portland Leather Products.

---

[1] From the Internet Archive, https://archive.org/about/.

## II.    Parties.

5.    Plaintiff Katherine Zipman is domiciled in Portland, Oregon.

6.    The proposed class includes citizens of every state.

7.    Defendant Portland Leather, LLC is an Oregon limited liability company with its principal place of business at 2512 SE Gladstone Street, Portland, OR 97202. It is a citizen of Oregon. *See* 28 U.S.C. § 1332(d)(10) (in a class action "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized").

## III.    Jurisdiction and Venue.

8.    The Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from the Defendant.

9.    The Court has personal jurisdiction over Defendant because its principal place of business is in Oregon.

10.    Venue is proper under 28 U.S.C. § 1391(b)(1) because Defendant resides in Portland.

## IV.    Facts.

### A.    Portland Leather's deceptive sales.

11.    Portland Leather sells leather products (the "Products") through its website (www.portlandleathergoods.com). Its Products are exclusive to it (not made or originally retailed by others). It also currently has a couple of retail stores and an Amazon store (as of 2024), but the vast majority of its sales over the past four years have been through its website. As its founder explained, it has "capitalized on the website-driven DTC [direct to consumer] model and experienced

substantial growth," to achieve over $100 million in sales as of 2023.[2] As a result, the true regular prices for its Products are driven by its website sales.

12.    Portland Leather advertises sales on its homepage with a prominent banner:



*Captured May 18, 2022*



*Captured August 7, 2023*

<hr>

[2] https://retailboss.co/portland-leather-goods-story/.



*Captured June 1, 2024*



*Captured February 7, 2025*

13. The item listings also show the sale, along with a strikethrough regular price (the former price) and the supposedly discounted price. For example:



Lava
**Leather Tote Bag**
$132 $92
with code TOAST30



Succulent
**Poppy Purse**
$128 $90
with code TOAST30

*Captured December 31, 2023*

14.      When a consumer adds an item to their cart, the cart shows the sale applied, the strikethrough price, and the supposedly discounted price. The cart also displays the purported savings from the discount. For example:



*Captured May 30, 2025*

15.     Plaintiff's counsel investigated Defendant's historical website sales using the Internet Archive's Wayback Machine (available at www.archive.org). The following table illustrates the persistence of the sales on Defendant's website over the past four years:

| Date | Advertised Sale |
| --- | --- |
| June 21, 2021 | Summer Sale 25% Off |
| July 30, 2021 | Extra 25% Off |
| August 19, 2021 | Extra 25% Off |
| September 16, 2021 | Save an Extra 25% |
| October 21, 2021 | Save an Extra 25% |

| Date | Advertised Sale |
| --- | --- |
| November 23, 2021 | Save an Extra 25% |
| December 12, 2021 | Save an Extra 30% Off |
| January 19, 2022 | Save an Extra 25% Off |
| February 2, 2022 | Save an Extra 30% Off |
| March 2022 | Internet archive not available |
| April 2022 | Internet archive not available |
| May 7, 2022 | Save an Extra 25% Off |
| June 1, 2022 | Take an Extra 25% Off |
| July 26, 2022 | Summer Sale 25% Off |
| August 8, 2022 | Summer Sale 25% Off |
| September 15, 2022 | Summer Sale 25% Off |
| October 8, 2022 | Fall Sale 25% Off |
| November 1, 2022 | Fall Sale 25% Off |
| December 2, 2022 | Happy Holidays Save 25% |
| January 5, 2023 | Save 25% |
| February 21, 2023 | Save an Extra 25% |
| March 26, 2023 | Save an Extra 25% |
| April 23, 2023 | Save an Extra 30% |
| May 14, 2023 | Save an Extra 25% |
| June 25, 2023 | Save an Extra 25% |
| July 24, 2023 | Save an Extra 25% |
| August 25, 2023 | Save an Extra 25% |

| Date | Advertised Sale |
| --- | --- |
| September 19, 2023 | Save an Extra 25% |
| October 5, 2023 | Save an Extra 30% |
| November 22, 2023 | 30% Off Black Friday |
| December 31, 2023 | Save an Extra 30% |
| January 2, 2024 | Save an Extra 30% |
| February 8, 2024 | Save an Extra 25% |
| March 28, 2024 | Save an Extra 30% |
| April 26, 2024 | Save an Extra 30% |
| May 3, 2024 | Save an Extra 30% |
| June 1, 2024 | Save an Extra 25% |
| July 6, 2024 | Save an Extra 30% |
| August 7, 2024 | Save an Extra 30% |
| September 2, 2024 | Save an Extra 30% |
| October 2, 2024 | Save an Extra 30% |
| November 28, 2024 | Save 30% |
| December 2, 2024 | Save 30% |
| January 5, 2025 | Save an Extra 25% |
| February 7, 2025 | Save an Extra 25% |
| March 15, 2025 | Save an Extra 25% |
| April 4, 2025 | Save an Extra 25% |
| May 20, 2025 | Save an Extra 25% |
| June 4, 2025 | Save an Extra 25% |

16.     Based on this evidence, throughout the past four years, a sale of at least 25% off was always available.

17.     To get the supposed discount, all consumers have to do is enter the advertised promo code. As shown above, the promo code is prominently displayed throughout Defendant's website, including on the homepage and product pages. And few (if any) consumers would turn down a supposed discount of 25% or more. So the overwhelming majority (if not all) online sales are made using the promo code discounts (and not at the supposedly regular list price).

18.     Portland Leather also sells "Almost Perfect" leather products on its website, at a supposed discount. It persistently advertises an "Almost Perfect" sale. For example:



*Captured February 15, 2024*

19.     But the strikethrough price is just the fake regular price that Portland Leather advertises for the corresponding normal bag (i.e., the perfect bag) or other Product. Take, for example, the "Almost Perfect Circle Crossbody" purse shown immediately above, with a strikethrough price of $172.  In February of 2024, the normal version of that bag was advertised on the Portland Leather website with a strikethrough price of $172, and a supposed discount of 25%. Since few (if any) consumers paid the supposed regular price for the normal bag, it is not the real regular price. Instead, the real regular price is 25% lower. As a result, the purported Almost Perfect sales are misleading in the same way the sales on normal Products are misleading (these sales misstate the regular price, and misstate the discount, by at least 25%).

20.     While most of Portland Leather's sales are through its website—and not its stores—it offered the same, misleading 25% off sale in its stores. For example:



*Captured June 10, 2022[3]*

---

[3] This photo was posted by a customer on Yelp, a review website.

21.     For all of Portland Leather's sales, reasonable consumers interpret Defendant's sale advertisements and strikethrough prices to mean that they will be getting a discount "off" of the former or regular prices that Defendant formerly and usually charges for its Products. In other words, reasonable consumers believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. This creates a sense of value and urgency: buy now, and you will receive something worth more than you pay for; wait, and you will pay more for the same thing later.

22.     Reasonable consumers also believe that the list prices Defendant advertises represent the true market value of the Products, and are the prevailing prices for those Products; and that they are receiving discounts from those listed regular prices.

23.     In truth, however, Defendant always offers discounts of at least 25% off. As a result, the list prices Defendant advertises are not actually Defendant's regular, former, or prevailing prices. And the purported discounts are illusory.

24.     By definition, reasonable consumers expect a sale to be time-limited (otherwise, it is not a sale, it is just the regular price). Defendant further emphasizes the supposed time-limited nature of its sales by, for example, attributing them to seasons (e.g. summer) or holidays (e.g., July 4). Portland Leather also shows a countdown clock for the sales. For example, on February 21, 2023, Defendant advertised "The Spring Edit" sale, which purported to end in "20 Hours; 48 Mins; 08 Secs":



*Captured February 21, 2023*

25.    But the next day, Defendant advertised the same sale and just reset the countdown clock:



*Captured February 22, 2023*

26.    This illustrates a recurring pattern: countdown clocks that run down and just restart the next day. While the fake "% Off" representations are deceptive alone, the fake clock compounds the deception.

27.    Portland Leather's fake sales work because reasonable consumers are not fake sale detectives. Reasonable consumers are not monitoring the website every day for months or years. And even a consumer who occasionally checks the website would reasonably believe that there

happened to be another legitimate sale. As illustrated above, discovering Defendant's deception required extensive mining of internet archives.

28.     Putative class members are still not aware of Defendant's fake sale scheme. Absent class members will learn of the scheme for the first time upon court-ordered class notice in this case.

29.     Sales drive purchases. Consumers are more likely to buy a product—and willing to pay more— if they believe that the product is on sale and that they are getting a product with a higher market value at a substantial discount.

30.     Defendant's advertisements harm consumers by inducing them to make purchases based on the false belief that they are getting a substantial discount. This artificially increases consumer demand for the Products. This, in turn, puts upward pressure on the prices that Defendant can charge. As a result, Defendant artificially sells more products and can charge an artificial price premium attributable to the fake sales. So due to the fake sales, Plaintiff and the putative class overpaid for the Products.

**B.     Plaintiff was misled and harmed by the deceptive sales.**

31.     On or around April 13, 2024, while living in Portland, Ms. Zipman purchased a Circle Crossbody bag from Defendant's website. The website represented that the bag had a regular price of $88, but was on sale for $61.60 (a 30% discount).  This was confirmed by her receipt.  She read and relied on the sale, which was important in driving her purchase.

32.     Ms. Zipman only discovered that the sales were permanent in June of this year, in connection with her counsel's investigation for this case. As explained above, reasonable consumers are not fake discount detectives and do not monitor sales to see if they are permanent.

33.     Plaintiff would not have made her purchase, at the price she paid, if she had known that the Product was not really discounted. She also overpaid for the Product because the fake sales increased consumer demand and drove up prices.

Class Action Complaint                    13                    Case No. 3:25-cv-01156

34.    Plaintiff faces an imminent threat of future harm. Plaintiff would purchase Products from Defendant again in the future if she could feel sure that Defendant's regular prices were honest and that its sales were real. But without a court injunction ordering Defendant to only advertise honest regular prices and honest sales, Plaintiff is unable to rely on Defendant's sales or supposed regular prices in the future, and so cannot purchase Products she would otherwise like to purchase.

**C.    Defendant breached its contract with and warranties with Plaintiff.**

35.    When Plaintiff and other members of the putative class purchased Portland Leather Products, they accepted offers that Defendant made. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the discounted price advertised on the website.

36.    Defendant's website and email receipts list the regular price (the market value) of the items that Defendant promised to provide. Defendant agreed to provide a discount equal to the difference between the regular prices and the prices paid by Plaintiff and putative class members. These were specific and material terms of the contract. These promises were also express warranties: affirmations of fact about the Products and a promise relating to the goods.

37.    Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

38.    Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the promised discounts. Defendant breached its express warranties for the same reasons.

**D.    No adequate remedy at law.**

39.    Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law. A legal remedy

is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims.

40.    In addition, to obtain a full refund as damages, Plaintiff must show that the Product she bought has essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased a Product that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

41.    Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

42.    Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm.

## V.    Class Action Allegations.

43.    Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: all U.S. residents who purchased discounted Portland Leather Products on Defendant's website or in store.

- Oregon Subclass: all Oregon residents who purchased discounted Portland Leather Products on Defendant's website or in store.

44.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

### Numerosity

45.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical. For example, in 2024, logistics company Cart.com stated that it helped Portland Leather ship "over 500,000 bags to the brand's customers."[4]

### Predominance of Common Questions

46.    There are central, predominating questions of fact and law common to the proposed class. For example:

(1)  whether Defendant's sales were persistent;

(2)  whether Defendant's advertised regular prices were really what it regularly charged;

(3)  whether Defendant's sales were misleading to reasonable consumers;

(4)  whether these sales violated consumer protection laws, breached Defendant's contract with proposed class members, and violated its express warranties;

(5)  restitution or damages needed to compensate Plaintiff and the proposed class.

### Typicality & Adequacy

47.    Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased a Portland Leather Product advertised at a discount from Defendant. There are no conflicts of interest between Plaintiff and the proposed class.

### Superiority

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be

---

[4] https://cart.com/newsroom/portland-leather-goods-and-cart-com-celebrate-record-breaking-peak-season-performance.

unduly burdensome to have individual litigation of small individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI.    Claims.

### Count 1: Oregon Unlawful Trade Practices Act (UTPA)
#### (By Plaintiff and the Oregon Subclass)

49.    Plaintiff incorporates each and every factual allegation set forth above.

50.    Plaintiff brings this cause of action for herself and the Oregon Subclass.

51.    As alleged in detail above, Defendant makes "false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions."  O.R.S. § 646.608(j).

52.    As alleged in detail above, Defendant also makes "false or misleading representations of fact concerning the offering price of … goods or services." O.R.S. § 646.608(s).

53.    As alleged in detail above, Defendant also "advertises … goods … with intent not to provide the … goods … as advertised." O.R.S. § 646.608(i). Defendant advertises the Products as having a market value equal to the regular list price. And Defendant advertises substantial discounts off that price. But Defendant knows that the regular price and discount are fake. That is, Defendant does not actually intend to offer a real discount off the true regular price.

54.    As alleged in detail above, Defendant also represents that its goods have characteristics that they do not in fact have. O.R.S. § 646.608(e). Defendant advertises that its Products have a value equal to the regular list price. And Defendant advertises substantial discounts off that price. But the Products do not really have the regular price value and there is not really a discount.

55.    As alleged in detail above, Defendant used false and misleading statements about the promotions (the regular prices and supposed sales) used to publicize its Products. O.R.S. § 646.608(p).

56.    The UTPA specifically prohibits sellers from using misleading price comparisons.

Class Action Complaint                    17                    Case No. 3:25-cv-01156

O.R.S. § 646.608(ee) (incorporating O.R.S. §§ 646.884 and 646.885). Defendant's price comparisons are misleading in several ways.

57.    Under O.R.S. § 646.883, the UTPA prohibits sellers from including "a price comparison in an advertisement unless" "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." As alleged in detail above, Defendant uses strikethrough pricing without clearly and conspicuously identifying in the advertisement the origin of the price that the seller is comparing to the current price.  Defendant provides no such disclosures.

58.    Under O.R.S. § 646.885, the use of term "sale" is deemed to identify "the origin of the price that the seller is comparing to the seller's current price as the seller's own former price, or in the case of introductory advertisements, the seller's future price." And, unless otherwise stated, use of the terms "discount," "_____ percent discount," "$_____ discount," "_____ percent off," and "$_____ off" are "considered to identify the origin of the price that the seller is comparing to the seller's current price as the seller's former price, or in the case of introductory advertisements, the seller's future price." O.R.S. § 646.885. As alleged in detail above, Defendant uses the words "sale," "discount," and "___% Off," in its promotions, even when the Products are not truly offered at a discount as compared to its former prices.

59.    Defendant's unlawful methods, acts, and practices described above were "willful violations" of O.R.S. § 646.608 because Defendant knew or should have known that its conduct was a violation, as defined by O.R.S. § 646.605(10). Like any company, Defendant tracks its own sales transactions and knows that its sales are permanent, that its regular prices are not what consumers are regularly paying, and that its discounts are not really discounts.

60.    As a direct, substantial, and proximate result of Defendant's conduct, Plaintiff and subclass members suffered ascertainable losses and injury to business or property.

61.     Plaintiff and subclass members (a) would not have purchased the Products at the prices they paid, if they had known that the advertised prices and discounts were fake; (b) paid more than they otherwise would have paid, due to Defendant's deceptive prices and sales; and (c) received Products that were not, in fact, worth as much as Defendant represented them to be worth (the regular prices).

62.     Plaintiff seeks, on behalf of herself and the subclass: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief and/or restitution; and (4) attorneys' fees and costs; and (5) an injunction. O.R.S. § 646.638(3); O.R.S. § 646.638(8).

## Count 2: Breach of Contract
### (By Plaintiff and the Nationwide Class)

63.     Plaintiff incorporates each and every factual allegation set forth above.

64.     Plaintiff brings this cause of action for herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action for herself and the Oregon Subclass.

65.     Plaintiff and class members entered into contracts with Portland Leather when they placed orders to purchase Products on Defendant's website.

66.     The contracts provided that Plaintiff and class members would pay Portland Leather for the Products ordered.

67.     The contracts further required that Portland Leather provide Plaintiff and class members with Products that have a market value equal to the regular prices displayed on the website and receipts, and to provide Plaintiff and the class members with the discount advertised on the website and listed in the receipt. These were specific and material terms of the contract.

68.     Plaintiff and class members paid Portland Leather for the Products they ordered, and satisfied all other conditions of their contracts.

69.     Portland Leather breached the contracts with Plaintiff and class members by failing

Class Action Complaint                    19                    Case No. 3:25-cv-01156

to provide Products that had a market value equal to the regular price displayed on its website, and by failing to provide the promised discount.

70.     As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

71.     For the breach of contract claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and the class as a result of Defendant's unlawful conduct.

**Count 3: Breach of Express Warranty**
**(By Plaintiff and the Nationwide Class)**

72.     Plaintiff incorporates each and every factual allegation set forth above.

73.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the Oregon Subclass.

74.     Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Portland Leather Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the regular price displayed on Defendant's website and that Plaintiff was receiving a discount off this value. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

75.     This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

76.     In fact, Portland Leather Products' stated market value was not the market value. Thus, the warranty was breached.

77.     Plaintiff provided Defendant with notice of this breach of warranty, by mailing a notice letter to Defendant's Portland headquarters and Austin, Texas office, on June 20, 2025.

78.     Plaintiff and the class were injured as a direct and proximate result of Defendant's

Class Action Complaint                    20                    Case No. 3:25-cv-01156

breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

79.     For her breach of express warranty claims, Plaintiff seeks all damages available including expectation damages or damages measured by the price premium charged to Plaintiff and the class as a result of Defendant's unlawful conduct.

## Count 4: Quasi-Contract/Unjust Enrichment
### (By Plaintiff and the Nationwide Class)

80.     Plaintiff incorporates the facts alleged above, except that Plaintiff brings this cause of action in the alternative to her Breach of Contract claim. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

81.     Plaintiff brings this claim for herself and the Nationwide Class.  In the alternative, Plaintiff brings this cause of action on behalf of herself and the Oregon Subclass.

82.     As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Portland Leather Products and to pay a price premium for these Products.

83.     In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

## Count 5: Negligent Misrepresentation
### (By Plaintiff and the Nationwide Class)

84.     Plaintiff incorporates each and every factual allegation set forth above.

85.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the Oregon Subclass.

86.     As alleged in detail above, Defendant made false representations to Plaintiff and

Class Action Complaint                          21                          Case No. 3:25-cv-01156

class members concerning its regular prices and discounts.

87.     When Defendant made these misrepresentations, it should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.  Like any company, Defendant tracks its own sales and its own transactions. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

88.     Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

89.     In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Portland Leather Products.

90.     Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

91.     Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

<u>**Count 6: Intentional Misrepresentation**</u>
**(By Plaintiff and the Nationwide Class)**

92.     Plaintiff incorporates each and every factual allegation set forth above.

93.     Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the Oregon Subclass.

94.     As alleged in detail above, Defendant made false representations to Plaintiff and class members concerning its regular prices and discounts.

95.     When Defendant made these misrepresentations, it knew that they were false at the

time that they made them or acted recklessly in making the misrepresentations. It knows that its sales persist and that its advertised regular prices are not really what consumers regularly pay.

96. Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

97. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Portland Leather Products.

98. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

99. Plaintiff and the class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

## VII.  Relief.

100. Plaintiff seeks the following relief for herself and the proposed class:

- An order certifying the asserted claims, or issues raised, as a class action;

- A judgment in favor of Plaintiff and the proposed class;

- Damages, statutory damages, treble damages, and punitive damages where applicable;

- Restitution;

- Rescission;

- Disgorgement, and other just equitable relief;

- Pre- and post-judgment interest;

Class Action Complaint                    23                    Case No. 3:25-cv-01156

- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;

- Reasonable attorneys' fees and costs, as allowed by law; and

- Any additional relief that the Court deems reasonable and just.

## VIII.  Jury Demand.

101.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: July 2, 2025                           Respectfully submitted,

                                              By:  _/s/ Jonas B. Jacobson_

                                              Jonas B. Jacobson (OSB No. 231106)
                                              jonas@dovel.com
                                              Simon Franzini (Cal. Bar No. 287631)*
                                              simon@dovel.com
                                              Dovel & Luner, LLP
                                              201 Santa Monica Blvd., Suite 600
                                              Santa Monica, CA 90401
                                              Tel: (310) 656-7066
                                              Facsimile: +1 (310) 656-7069

                                              *Attorneys for Plaintiff*

                                              * Pro Hac Vice application forthcoming


Class Action Complaint                  24                  Case No. 3:25-cv-01156